[Cite as *Thies v. Wheelock*, 2017-Ohio-8605.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MIAMI COUNTY**

| | | |
|---|---|---|
| PAUL D. THIES | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2017-CA-8 |
| | : | |
| v. | : | T.C. NO. 14-CV-06 |
| | : | |
| KENNETH WHEELOCK | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# **O P I N I O N**

Rendered on the 17th day of November, 2017.

. . . . . . . . . . .

JONATHAN S. ZWEIZIG, Atty. Reg. No. 0069381, 18 East Water Street, Troy, Ohio 45373
    Attorney for Plaintiff-Appellee

ANDREW H. JOHNSTON, Atty. Reg. No. 0088008, 215 W. Water Street, Troy, Ohio 45373
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Kenneth Wheelock appeals from a judgment of the Miami County Court of Common Pleas, which found that he had breached an oral contract with Paul Thies to negotiate jointly for the purchase of certain parcels of real property, ordered Wheelock to transfer the disputed parcels to Thies in specific performance on the contract, ordered Thies to pay Wheelock $180,000 for the property, and placed the parcels in a constructive trust until the transfer could be effectuated. For the following reasons, the judgment of the trial court will be affirmed.

{¶ 2} On October 14, 2013, Thies and Wheelock attended a real estate auction in Miami County. Five parcels were for sale, and bids could be made on all of the properties or any combination of them. Thies represented Waterwheel Farms, Inc., at the auction, a company owned by Thies and his son. Wheelock was interested in purchasing all of the properties, but Thies was interested only in parcels 4 and 5.

{¶ 3} After the bidding had started, Wheelock approached Thies about submitting a joint bid. Pursuant to their conversation, Thies, who had made bids on parcels 4 and 5, stopped bidding, and Wheelock bid on all five parcels, with the understanding that Thies would set the amount he was willing to pay for parcels 4 and 5, and Wheelock would factor this amount into his bid for the five parcels. If the joint bid were successful, Thies would take title to parcels 4 and 5, and Wheelock would take title to parcels 1, 2, and 3. No specifics as to the payment of closing costs or the manner of transferring title and payment were discussed.

{¶ 4} Wheelock was ultimately the successful bidder on the five parcels, at a price of $330,000. However, at the end of the auction, Wheelock denied that he had bid on

parcels 4 and 5 on Thies's behalf, and Wheelock entered a contract with the sellers to purchase all five of the parcels in his own name. Wheelock later offered to sell parcels 4 and 5 to Thies, but at a higher price than what Thies had agreed to pay.

{¶ 5} On January 10, 2014, Thies filed a complaint against Wheelock for specific performance and damages. He twice amended his complaint and added a claim for imposition of a constructive trust. On January 14, 2015, the matter was tried to the bench. The parties also filed post-trial briefs.

{¶ 6} On April 5, 2017, the trial court entered judgment in favor of Thies. The trial court found Thies's version of events to be credible and found Wheelock to be "[a]t the other end of the credibility spectrum." (The parties' testimonies and the other evidence offered at trial is discussed in more detail below.) The trial court found that the parties had entered into an oral contract that Thies would refrain from bidding and that Wheelock would bid on all five parcels, with the understanding that, if Wheelock were the successful bidder on the parcels, Thies would pay Wheelock $180,000 for the rights to parcels 4 and 5.[1]

{¶ 7} The court rejected Wheelock's argument that the statute of frauds prevented enforcement of the parties' agreement; the court concluded that the agreement was not one for the sale of land (as would fall within the statute of frauds), but for the "right to enter into a contract for the purchase of real estate from a third party at a specific price." The court also rejected Wheelock's argument that Thies lacked standing to bring the action in his personal capacity, because he had been at the auction in his capacity as a

---

[1] The initial agreement was that Thies would pay $160,000 for parcels 4 and 5 but, during the course of the auction, Thies authorized an increase to $180,000.

representative of Waterwheel Farm, Inc. Although the trial court determined that Thies's monetary damages were $144,000, "[i]n the alternative to the judgment for damages," it granted specific performance on the contract. Further, the court imposed a constructive trust on parcels 4 and 5 until they were transferred to Thies.

{¶ 8} Wheelock raises four assignments of error on appeal. We begin with his first assignment, particularly his argument that Thies lacked standing to bring his claims, because it presents a threshold issue. We will address the other assignments in an order that facilitates our discussion.

### *Standing*

{¶ 9} Wheelock contends that Thies did not have standing to bring his claim in his personal capacity, because Thies attended the auction and initially registered to bid and bid on the parcels in question as a representative for Waterwheel Farms. (Waterwheel Farms was not a party in this case.) The trial court acknowledged that Thies had registered for the auction and initially bid on the parcels as the president of Waterwheel Farms, and that he did not make any bids in his individual capacity. Nonetheless, it concluded that he had standing to bring a claim against Wheelock.

{¶ 10} Article IV, Section 4(B) of the Ohio Constitution provides: "The courts of common pleas and divisions thereof shall have such original jurisdiction *over all justiciable matters* and such powers of review of proceedings of administrative officers and agencies as may be provided by law." (Emphasis added.) " 'Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue.' " *Fed. Home Loan Mortg. Corp. v. Schwartzwald,* 134 Ohio St.3d 13, 2012-Ohio-

5017, 979 N.E.2d 1214, ¶ 21, citing *Cleveland v. Shaker Hts.,* 30 Ohio St.3d 49, 51, 507 N.E.2d 323 (1987). Standing "relates to whether a party has a personal stake in the outcome" of a case, and a lack of standing may require a court to dismiss an action. *Id.* at ¶ 22-23; *Gaither v. Wall & Assoc., Inc.,* 2017-Ohio-765, 79 N.E.3d 620, ¶ 60 (2d Dist.), citing *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 19.

{¶ 11} The trial court found that Thies's agreement with Wheelock was for Thies to cease bidding on parcels 4 and 5 on behalf of Waterwheel Farm. The court noted that Thies was acting under the authority of a corporate resolution when he went to the auction to bid on parcels 4 and 5. Because he did not have express authority to enter into a separate agreement with Wheelock to negotiate for the properties jointly, Thies entered his agreement with Wheelock in his own name, with the intention of later conveying or leasing the property to Waterwheel Farms if he and Wheelock were successful in their bidding. The trial court concluded that Thies's "status as a corporate representative did not preclude him from entering into the agreement in his own name with Wheelock," and that "[n]othing in the oral agreement established that Thies was acting on behalf of Waterwheel [Farms] in the formation of the agreement."

{¶ 12} We agree with the trial court's conclusion. The fact that Thies initially intended to bid and did bid on the parcels as a representative of Waterwheel Farms did not preclude him from entering into an oral contract with Wheelock in his personal capacity. Because Thies entered the oral agreement in his personal capacity, he was entitled to enforce it in his personal capacity. As such, Thies did not lack standing to bring an action to enforce the oral contract.

*Contract Formation*

**{¶ 13}** Under the first assignment of error, Wheelock also challenges the trial court's conclusion that the parties had formed an oral contract; he claims that there was no meeting of the minds.

**{¶ 14}** We defer to the trial court's findings of fact, but we review the court's legal conclusions de novo. *Kidd v. Alfano*, 2016-Ohio-7519, 64 N.E.3d 1052, ¶ 29 (2d Dist.), citing *Boyd v. Moore*, 184 Ohio App.3d 16, 2009-Ohio-5039, 919 N.E.2d 283, ¶ 9 (2d Dist.). As we address Wheelock's argument that the trial court's judgment was not supported by the evidence, this court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *Buckeye Retirement Co., LLC v. Busch*, 2017-Ohio-4009, 82 N.E.3d 66 (2d Dist.)

**{¶ 15}** The trial court made the following findings regarding what transpired at the auction and the testimony of the witnesses. We quote a portion of the trial court's judgment directly, because it reflects the trial court's weighing of the evidence.

> The bidding commences at 10:14 am. After some initial bidding by Wheelock and another bidder, Dan Garber, Thies[2] submitted a bid at 10:26

---

[2] The trial court's judgment spells the plaintiff's name as both Theis and Thies. Thies is the correct spelling, and we have corrected other spellings in this excerpt. We have also corrected a couple of instances where the trial court referred to Wheelock as Wheeler.

a.m. on behalf of Waterwheel for parcels 4 and 5 in the amount of $160,000. After the Thies bid, Wheelock came over to the table where Thies was located and discussed with him the merits of Wheelock submitting bids on behalf of both parties. [Thies] agreed to forgo further bidding and for Wheelock to bid on all five parcels without additional bids by [Thies]. It was clearly understood that, if Wheelock was the successful bidder, [Thies] would end up with parcels 4 and 5, and Wheelock with parcels 1, 2 & 3.

As the bidding progressed, parcels 1, 2 and 3 were the subject of increased bids, but there were no higher bids on 4 and 5 until bidder number one, Dan Garber, bid $170,000 at 11:28. This bid made Garber's total bids for all five parcels to be $310,000. Garber's bid was $5,000 higher than the previous bid by Wheelock of $305,000. At that point, Thies walked over to the table where Wheelock was seated and handed him a piece of paper increasing the amount Thies would pay for parcels 4 and 5 to $180,000.

At 11:34, a little over five minutes from the last Garber bid, Wheelock increased his bid to $315,000. At 11:37, Garber increased his bid on parcels 1, 2 and 3 to $155,000, which, combined with his earlier bid of $170,000 on parcels 4 & 5 resulted in a total bid of $325,000. Less than two minutes later, Wheelock entered the winning bid for $330,000. From the time of the single bid by [Thies on behalf of Waterwheel], which was about 11 minutes after the start of the auction, until the winning bid an hour and 13 minutes later, Waterwheel did not make any additional bid on parcels 4 and 5.

At the conclusion of the auction, Wheelock would not agree that he had bid on parcels 4 and 5 on behalf of [Thies], and entered into a contract with the seller to purchase all five parcels in his name for the winning bid. During discussions with Thies, Wheelock did tell [Thies] he would sell him parcels 4 and 5 but it would be for more than $180,000.

During the trial, the plaintiff's witnesses were Jerry Stichter, the auctioneer, Don Leis, a realtor, the defendant, Kenneth Wheelock, and the plaintiff, Don Thies. Kenneth Wheelock testified for the defense. In reaching this decision and verdict, the court has taken into account the credibility of the witnesses. In particular, the court felt that testimony of Don Leis was the most credible of all witnesses who testified for either party. His testimony was thoughtful, honest and frank when answering questions. When cross examined about how he could recall the events of the auction fifteen months earlier, Leis testified that he went home after the auction and wrote down his recollection of everything that happened because he anticipated that he would someday be asked about the auction.

At the other end of the credibility spectrum was the defendant, Kenneth Wheelock. Mr. Wheelock's credibility suffered because his testimony at trial was different than his testimony at a deposition, and even different from his testimony earlier in the trial. The credibility issue was decisive when it came to the difference in accounts of the events at the auction. For example, Wheelock testified that, during the auction, he went to the table occupied by Thies and Leis for a second conversation. Both

[Thies] and Leis were adamant that Wheelock only came to their table one time early on in the auction. Wheelock testified that he came over to [Thies's] table to see if Thies would increase the amount he would pay on parcels 4 & 5 beyond $180,000. Wheelock testified that Thies told him that he should "use your own judgment" when Thies did not agree to increase his contribution to the bid. Wheelock said he took that conversation to mean that their agreement for joint bidding was terminated. However, the court does not believe that Wheelock came to [Thies's] table a second time and as a consequence does not believe the conversation took place.

{¶ 16} A contract is generally defined as a promise, or a set of promises, actionable upon breach. The essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent, and legality of object and of consideration. The parties must have a "meeting of the minds" as to the essential terms of the contract in order to enforce the contract. *Younce v. Heartland of Centerville*, 2016-Ohio-2965, 65 N.E.3d 192, ¶ 38 (2d Dist.)

{¶ 17} Wheelock argues that the trial court erred in finding that the parties had a meeting of the minds, but the evidence – and the trial court's view of its credibility – support the conclusion that the parties had come to an agreement. The fact that the parties had not discussed all of the specifics, such as the mechanics of the transfer of title and who would pay closing costs, did not preclude the court from concluding that there had been a meeting of the minds. Wheelock does not assert that any of the other elements of a contract were missing.

{¶ 18}   Based on our review of the evidence presented at trial, we cannot conclude that the trial court clearly lost its way or created a manifest miscarriage of justice in finding that there had been a meeting of the minds and that an oral contract had been entered.

### *Statute of Frauds*

{¶ 19} Wheelock's final argument under his first assignment of error is that the trial court erred in finding that the statute of frauds did not apply to the parties' agreement, which involved "real estate interests."   He asserts that, even if there were a meeting of the minds, the parties' agreement was unenforceable because it was not in writing.

{¶ 20} Ohio's statute of frauds, R.C. 1335.05, provides: "No action shall be brought whereby to charge the defendant * * * upon a contract or sale of lands * * * or interest in or concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith * * *."   Similarly, R.C. 1335.04 states that "[n]o lease, estate, or interest * * * in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing * * *."   *See Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 662 N.E.2d 1074 (1996) (recognizing both R.C. 1335.04 and R.C. 1335.05 as setting forth Ohio's statute of frauds).

{¶ 21} The statute of frauds is "an evidentiary rule" intended to prevent misunderstandings regarding the sale of land; "to some extent, it can override the intent of the parties."   *Jackson v. Force*, 2d Dist. Miami No. 2014-CA-6, 2014-Ohio-3167, ¶ 40.

> The purpose of the statute of frauds is to prevent "frauds and perjuries."
>
> *Wilber v. Paine* (1824), 1 Ohio 251, 255.   The statute does so by informing
>
> the public and judges of what is needed to form a contract and by

encouraging parties to follow these requirements by nullifying those agreements that do not comply. "[T]he statute of frauds is supposed both to make people take notice of the legal consequences of a writing and to reduce the occasions on which judges enforce non-existent contracts because of perjured evidence." Kennedy, Form and Substance in Private Law Adjudication (1976), 89 Harv.L.Rev. 1685, 1691. "In every case, the formality means that unless the parties adopt the prescribed mode of manifesting their wishes, they will be ignored. The reason for ignoring them, for applying the sanction of nullity, is to force them to be self conscious and to express themselves clearly * * *." Id. at 1692.

Olympic Holding Co., L.L.C. v. ACE Ltd., 122 Ohio St.3d 89, 2009-Ohio-2057, 909 N.E.2d 93, ¶ 33.

{¶ 22} The question in this case is whether the parties' agreement to bid on the property jointly constituted an agreement "upon a contract or sale of lands" or pertaining to an "interest in" land, so as to come within the requirements of the statute of frauds. The parties' agreement, in itself, did not cause any land or interest therein to be transferred; in fact, when the agreement was made, the parties' had not yet acquired, and were not sure that they would acquire, any interest in the parcels that were being auctioned. Rather, they agreed to bid on the parcels collectively. However, the effect of the successful bid was to obtain the right to transfer title, which is the stage at which the dispute between Thies and Wheelock arose.

{¶ 23} Thies relies on Regan v. Paxton, 6th Dist. Lucas No. L-01-1205, 2002 WL 126077 (Feb. 1, 2002), in support of his argument that the statute of frauds did not apply;

Wheelock contends that *Regan* is distinguishable. In *Regan*, plaintiff-insurance agents entered into an agreement with defendant-insurance agents to form a new business entity "for the express purpose of owning, renovating, managing, renting, leasing, depreciating, dividing, and disposing of property," and the new entity would own and operate from a property that was about to be auctioned. The agreement for the formation of the new business entity was "a partially express and partially implied contract." *Id.* at * 3. When the auction of the property in question was held, the plaintiff-agents were present, but they did not bid, in reliance on the agreement with the defendant-agents, who were the successful bidders. The defendant-agents then formed their own business entity, which took title to the auctioned property. The plaintiff-agents sued for breach of contract (seeking specific performance), fraud, and tortious interference with a business relationship. The trial court dismissed the breach of contract claim because the parties' agreement regarding the property was not in writing.

{¶ 24} The Sixth District reversed the trial court's judgment. It found that an "oral agreement [to] * * * transfer or promise to transfer real property, *already owned*," from one partner or partnership to another, is distinguishable from a claim that "hinges on the allegation that [one partner was] to purchase the property on behalf of the partnership and failed to do so." (Emphasis added.) *Id.* at * 5. The court held that the statute of frauds applied to the former type of agreement, but not to the latter.

{¶ 25} *Regan* is analogous to Thies's case because, in both cases, the agreement at the heart of the breach of contract claim was an agreement to negotiate on behalf of the other party for the right to have the title transferred to him/it in a separate transaction, not for the transfer of title itself. In both cases, the party alleged to have breached the

contract did not hold title to the disputed property when the agreement was entered, and thus was not yet in a position to enter an agreement to transfer an interest in the property.

{¶ 26} Thies argues that cases involving options to purchase real property are also analogous; he cites *In re Estate of Stevens*, 2d Dist. Champaign No. 2011 CA 26, 2012-Ohio-1860, ¶ 29. In *Stevens*, we stated that the exercise of an option to purchase farmland did "not assign or grant an interest in land, but merely establish[ed] [the] right to compel performance of the sale," and thus that the statute of frauds did not apply. *Id.* at ¶ 29. However, in *Stickney v. Tullis-Vermillion*, 165 Ohio App.3d 480, 2006-Ohio-842, 847 N.E.2d 29, ¶ 22 (2d Dist.), we held that options to purchase real property do fall within the statute of frauds. The Sixth District Court of Appeals has also held that options to purchase real property fall "squarely within the statute of frauds." *Ridge Stone Builders & Developers, Ltd. v. Gribbin*, 6th Dist. Wood No. WD-03-009, 2003-Ohio-5188, ¶ 23, citing *Hubbard v. Dillingham*, 12th Dist. Butler No. CA 2002-02-045, 2003-Ohio-1443, ¶ 21.

{¶ 27} In *Stevens*, the estate owned the property and an heir wanted to exercise an option granted to him in the will to purchase property. In *Stickney*, the trust owned the property and a beneficiary sought to extend the time in which he could exercise an option to purchase it.

{¶ 28} This case is much closer to *Regan*. It does not involve an option to purchase real estate that one of the parties to the agreement already owns. Rather, the essence of agreement in this case and in *Regan* was that one of the parties would attempt to purchase property for both of them. Indeed, the subsequent transaction involving the actual transfer would be within the statute of frauds. But when parties merely enter into

an agreement which concerns real property, but neither owns the property in question at the time the agreement is entered, the agreement cannot reasonably be interpreted as one that is for the sale of land or relates to an interest in land. Under such circumstances, any potential transfer of the interest in question is contingent on other intervening events, over which the parties may have limited control, and which may never come to pass at all. Such an agreement might create a right to compel a subsequent transfer of interest in real property and may impact future interests in land, but it does not, itself, "charge" one of the parties "upon a contract or sale of lands" or "assign" or "grant" and interest in land.

{¶ 29} We also find this case to be distinguishable from cases in which the statute of frauds was applied to an oral agreement for the transfer of real property, where a prerequisite, related sale of real property was in writing, and the alleged oral agreements conflicted with the written agreements. Such is not the case under the facts of this case. *See Watson v. Erb*, 33 Ohio St. 35 (1877) (involving straw man purchase to conceal the identity of a prospective buyer); *Kilbury v. Bennett*, 5th Dist. Delaware No. 98-CA-39, 1999 WL 436742 (June 2, 1999) (where purchase agreement, general warranty deed, and title affidavit executed related to a sale of land that the parties had orally agreed to partition at a later date made no mention of such an agreement and conflicted with the alleged oral agreement.)

{¶ 30} Further, even if we were to find that the statute of frauds applied in this case, an exception exists where the contract has been partially performed. *Mishler v. Hale*, 2014-Ohio-5805, 26 N.E.3d 1260, ¶ 26 (2d Dist.). In order to establish partial performance, a party asserting it must have undertaken acts that "changed his position

to his detriment and make it impossible or impractical to place the parties in status quo." *Lowe v. Phillips*, 2d Dist. Montgomery No. 20590, 2005-Ohio-2514, ¶ 20, quoting *Beaverpark Assoc. v. Larry Stein Realty Co.,* 2d Dist. Montgomery No. 14950, 1995 WL 516469 (Aug. 30, 1995); *Delfino v. Paul Davies Chevrolet, Inc.,* 2 Ohio St.2d 282, 287, 209 N.E.2d 194 (1965) (addressing statute of conveyances, R.C. 5301.01). Thus, a party seeking to avoid the statute of frauds by virtue of the doctrine of partial performance must establish, by clear and convincing evidence, that he or she performed acts (1) which were exclusively referable to the oral agreement to convey land, and (2) which changed his or her position to his or her prejudice. *Geiger v. Geiger*, 2d Dist. Montgomery No. 13841, 1993 WL 476247, *2, *4 (Nov. 16, 1993).

{¶ 31} Partial performance "must consist of unequivocal acts by the party relying upon the agreement, which are exclusively referable to the agreement and which have changed his position to his detriment," making it impossible or impractical to place the parties in status quo; "[i]f the performance can reasonably be accounted for in any other manner or if plaintiff has not altered his position in reliance on the agreement, the case remains within the operation of the statute." *Delfino* at 287.

{¶ 32} Thies partially performed his part of the agreement by foregoing his opportunity to bid on parcels 4 and 5 in his own name and/or on behalf of Waterwheel Farms. He presented evidence that he changed his position to his detriment based on his reliance on the parties' agreement, and Wheelock did not refute this evidence. As such, even if the trial court had found that the statute of frauds applied, it could also have reasonably concluded that Thies's partial performance removed the parties' oral agreement from the statute of frauds.

**{¶ 33}** Wheelock's first assignment of error is overruled.

### Specific Performance

**{¶ 34}** In his third assignment of error, Wheelock asserts that the trial court erred and showed its "hypocrisy" in finding that Thies was "entitled to the extraordinary remedy of specific performance."

**{¶ 35}** We have recognized "the legal principle that an interest in land is unique; different locations are not interchangeable." *Outback/Buckeye-II, Ltd. Partnership v. Lofino Grandchildren's Trust*, 2d Dist. Greene Nos. 06-CA-2 and 06-CA-44, 2007-Ohio-577, ¶ 64, citing *Sholiton Industries, Inc. v. Wright State Univ.,* 2d Dist. Greene No. 95-CA-101, 1996 WL 531587, * 5 (Sept. 20, 1996); *see also Holstein v. Crescent Communities, Inc.,* 10th Dist. Franklin No. 02AP-1241, 2003-Ohio-4760, ¶ 16 ("real estate is almost always unique"); *A-C Group, Inc. v. Rabe*, 5th Dist. Stark No. 5710, 1981 WL 6586, * 2 (Dec. 14, 1981) (because real estate is unique, a buyer is entitled to specific performance).

**{¶ 36}** Specific performance is generally only available where there is no adequate remedy at law, and courts have recognized the uniqueness of real property, as discussed above. As such, where real property is involved, the usual duty to prove that there is no adequate legal remedy where specific performance is sought does not apply. "[W]here land is the subject matter of the agreement, the jurisdiction of equity to grant specific performance does not depend upon the existence of special facts showing the inadequacy of a legal remedy in the particular case. Contracts involving interests in land * * * generally are specifically enforced because of the clear inadequacy of damages at law for breach of contract." (Internal citations omitted.) *Gleason v. Gleason*, 64 Ohio

App.3d 667, 672, 582 N.E.2d 657 (4th Dist.1991).

{¶ 37}   Although we have found that the parties' oral agreement did not involve an "interest in land" so as to bring it within the statute of frauds, Wheelock's breach of that agreement had the effect of depriving Thies of an opportunity to purchase an interest in land, an interest which Wheelock did acquire.   Under these circumstances, we agree with the trial court that specific performance is an appropriate remedy, and we reject Wheelock's argument that Thies was required to show the inadequacy of damages as a legal remedy.

{¶ 38} Wheelock's third assignment of error is overruled.

### Constructive Trust

{¶ 39}   In his fourth assignment, Wheelock contends that the trial court erred in imposing a constructive trust on parcels 4 and 5.   Specifically, he asserts that the constructive trust is "moot" because equitable remedies (other than specific performance) were available and because the court's finding that Thies was entitled to parcels 4 and 5 upon the payment of $180,000, pursuant to the parties' oral agreement, was against the manifest weight of the evidence.

{¶ 40}   The Supreme Court of Ohio has defined a constructive trust as follows:

* * * [A] trust by operation of law which arises * * * against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.   It is raised by

equity to satisfy the demands of justice. * * * When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. * * *

*Ferguson v. Owens*, 9 Ohio St.3d 223, 225-26, 459 N.E.2d 1293 (1984), citing 76 American Jurisprudence 2d 446, Trusts, Section 221 (1975) and *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386, 389, 122 N.E. 378 (1919).

{¶ 41} The trial court reasonably concluded that a constructive trust was appropriate, because Wheelock obtained title to parcels 4 and 5 through fraud, abuse of confidence, or other unconscionable conduct. Wheelock's argument that a constructive trust was inappropriate is premised on his arguments under other assignments of error that the trial court erred in finding that 1) the parties had an oral agreement, and 2) specific performance was an appropriate remedy. Because we have rejected these arguments, we likewise reject his argument that the constructive trust was inappropriate.

{¶ 42} Wheelock's fourth assignment of error is overruled.

***Damages***

{¶ 43} Finally, Wheelock argues in his second assignment of error that the trial court improperly calculated damages in the amount of $144,000.

{¶ 44} In its judgment entry, the trial court stated that there was "credible testimony that, at the time of the auction, parcels 4 and 5 had a fair market value of $324,000. [Wheelock's] failure to have the seller of the real estate title these parcels in the name of [Thies] in exchange for Thies's payment to Wheelock of $180,000, has resulted in damages in the loss of value to [Thies] in the amount of $144,000." The court

then proceeded to address Thies's claim for specific performance, finding that he was entitled to specific performance. It was clear from Thies's complaint and from his testimony at trial that he favored specific performance over damages, and the court described specific performance as an award "[i]n the alternative to the judgment for damages." The court ordered Thies to pay Wheelock $180,000 (the amount the trial court found Thies had offered to pay for parcels 4 and 5 when he and Wheelock were negotiating jointly) when Wheelock tendered the deed for parcels 4 and 5, pursuant to the order of specific performance, in accordance with the parties' agreement at the auction. In light of the court's award of specific performance, its determination of an amount of damages, in the alternative, was superfluous, and Wheelock was not prejudiced by it.

{¶ 45} The second assignment of error is overruled.

{¶ 46} The judgment of the trial court will be affirmed.

. . . . . . . . . . . .

HALL, P.J. and DONOVAN, J., concur.

Copies mailed to:

Jonathan S. Zweizig
Andrew H. Johnston
Hon. Christopher Gee