[Cite as *St. Vincent Charity v. Paluscsak*, 2023-Ohio-4641.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| ST. VINCENT CHARITY, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111932 |
| v. | : | |
| MICHAEL PALUSCSAK, ET AL., | : | |
| Defendants-Appellants. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 21, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-898214

### *Appearances:*

Davis & Young, Matthew P. Baringer, and Thomas W. Wright, *for appellee* St. Vincent Charity.

Porter Wright Morris & Arthur, L.L.P., Tracey L. Turnbull, and Jared M. Klaus, *for appellee* United Collection Bureau, Inc.

The Law Office of Boyd W. Gentry, Boyd W. Gentry, and Zachary P. Elliott, *for appellees* George Gusses Co., L.P.A., George Gusses, Robin A. Worline, and Joseph T. Szyperski.

Robert S. Belovich, L.L.C., and Robert S. Belovich; The Misra Law Firm, L.L.C., and Anand N. Misra, *for appellant*.

ANITA LASTER MAYS, A.J.:

{¶1} Defendant-appellant Michael Paluscsak ("Paluscsak") appeals the trial court's decision granting summary judgment to the plaintiffs-appellees St. Vincent Charity Medical Center ("SVCMC"); United Collection Bureau, Inc. ("UCB"); and attorneys George Gusses, Robin Worline, and Joseph Szperski and their law firm, George Gusses Co. LPA, collectively known as "the Gusses."  We affirm the trial court's decision.

## I.      Facts and Procedural History

{¶2} In September 2015, Paluscsak had an MRI performed on his knee at SVCMC.  He was billed $1,175.40 for the procedure, but he did not pay it.  After the bill went unpaid for 18 months, SVCMC referred the account to UCB for collections.  On June 2, 2017, UCB sent a collections letter to Paluscsak and also hired the Gusses to file a debt collection action against Paluscsak.  On July 11, 2019, the Gusses filed a lawsuit.

{¶3} On August 14, 2017, Paluscsak filed an answer to the Gusses' complaint and also filed counterclaims on behalf of a putative class based on the Fair Debt Collection Practices Act ("FDCPA") and the Ohio Consumer Sales Practices Act ("OCSPA"). Paluscsak claimed that the appellees committed fraud and abuses of process because the debt collection was initiated in the name of "St. Vincent Charity" and not the formal name "St. Vincent Charity Medical Center." Paluscsak argued in his counterclaim that the letters from UCB and the Gusses falsely stated

that he owed money to St. Vincent Charity when the entity does not exist. Further, Paluscsak contended that the Gusses signed a complaint on behalf of St. Vincent Charity, omitting the words "Medical Center" in an effort to cheat unsuspecting and unsophisticated consumers.

{¶4} Although Paluscsak did not file an objection, he claims that the Gusses violated the FDCPA because they filed the complaint in Cleveland Municipal Court instead of Garfield Heights Municipal Court, where he resides. However, the matter proceeded in the Cleveland Municipal Court.

{¶5} After the filing of the complaint and counterclaim, a number of motions were filed and ruled upon. SVCMC dismissed its complaint against Paluscsak in the municipal court, leaving Paluscsak's counterclaim as the sole issue. UCM filed a motion to certify the case to the Cuyahoga County Common Pleas Court ("trial court"). The municipal court granted the motion because the amount sought in Paluscsak's counterclaim exceeded the jurisdictional monetary limit of the municipal court. On May 22, 2018, the case was transferred to the trial court.

{¶6} On June 19, 2018, Paluscsak moved for default judgment against the appellees. SVCMC filed a motion for leave to file an answer to the counterclaim. The trial court granted SVCMC's motion, but denied Paluscsak's motion for default judgment. On July 10, 2018, the trial court also dismissed Paluscsak's claims for fraud and abuse of process. On August 14, 2018, the trial court dismissed

Paluscsak's counterclaim against the appellees for fraud and abuse of process and denied the motion with respect to the FDCPA and OCSPA claims.

{¶7} The trial court dismissed Paluscsak's case because his counsel failed to appear. Paluscsak filed an appeal in *St. Vincent Charity v. Paluscsak*, 8th Dist. Cuyahoga No. 108641, 2020-Ohio-1501 ("*Paluscsak I*"), where the court reversed the trial court's decision, stating: "The trial court abused its discretion in dismissing appellant's counterclaim for failure to prosecute based on appellant's failure to participate in the May 7, 2019 phone conference." *Id*. at ¶ 49.

{¶8} On September 14, 2020, the trial court ordered Paluscsak to appear in person for a deposition on October 1, 2020. Paluscsak appealed the order to this court and subsequently to the Supreme Court, and both appeals were dismissed. On August 26, 2021, Paluscsak filed a motion to compel discovery from the Gusses, and, on September 20, 2021, filed the same motion against UCB. On December 13, 2021, the trial court denied both motions.

{¶9} On January 10, 2022, UCB and the Gusses filed motions for summary judgment, with SVCMC filing to join the summary judgment motions. The motions argued that Paluscsak does not have standing because he admitted that he had not suffered any injury as a result of UCB's use of SVCMC's abbreviated name of St. Vincent Charity and that the use of the abbreviated name was not false, deceptive, or misleading. The motions also argued that Paluscsak's FDCPA and OCSPA claims fail as a matter of law.

{¶10} On August 15, 2022, the trial court granted the appellees' summary judgment motions. The trial court reasoned that Paluscsak had no standing because he was not injured by the use of the nickname or the case being filed in Cleveland instead of Garfield Heights. The trial court also reasoned that Paluscsak's claims under FDCPA and OCSPA fail as a matter of law because he did not demonstrate he was injured.

{¶11} Paluscsak filed this appeal and assigned six assignments of error for our review:

1. The trial court committed prejudicial error in holding that Paluscsak lacked standing to bring his counterclaim;

2. The trial court committed prejudicial error in refusing to consider claims on collection actions taken in violation of R.C. 1319.12 and the resulting unauthorized practice of law;

3. The trial court committed prejudicial error in finding that counterclaim defendants did not violate the FDCPA by filing a collection lawsuit in a court district where Paluscsak did not reside or where he did not sign a contract on which the collection claim was based;

4. The trial court committed prejudicial error in finding the counterclaim defendants did not violate the FDCPA by filing a collection lawsuit in the name of an unregistered fictitious name;

5. The trial court committed prejudicial error in concluding that the counterclaim defendants did not violate the OCSPA; and

6. The trial court abused its discretion and prejudicial error in denying Paluscsak's motion to compel.

## II.    Summary Judgment

### A.    Standard of Review

{¶12} Under Civ.R. 56(C), summary judgment is appropriate when "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably to the party against whom the motion is made, reasonable minds can only reach a conclusion that is adverse to the nonmoving party." *Chester/12 Ltd. v. Epiq Constr. Servs.*, 8th Dist. Cuyahoga Nos. 111626 and 112198, 2023-Ohio-1886, ¶ 17, citing *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶13} "The moving party has the initial burden of setting forth specific facts that demonstrate its entitlement to summary judgment." *Id.* at ¶ 18, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). "If the moving party fails to meet this burden, summary judgment is not appropriate." *Id.* "If the moving party meets this burden, the nonmoving party has a reciprocal burden of setting forth specific facts using evidence permitted by Civ.R. 56(C) to show that there is a genuine issue for trial." *Id.* "Summary judgment is appropriate if the nonmoving party fails to meet this burden." *Id.*

{¶14} "We review the trial court's judgment de novo, using the same standard that the trial court applies under Civ.R. 56(C)." *Id.* at ¶ 19, citing *Grafton*

*v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "Accordingly, we stand in the shoes of the trial court and conduct an independent review of the record." *Id.*

## B.    Standing

**{¶15}** In Paluscsak's first assignment of error, he argues that the trial court committed prejudicial error holding that he lacked standing to bring his counterclaim. "'Standing' is defined as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.'" *Torrance v. Rom*, 2020-Ohio-3971, 157 N.E.3d 172, ¶ 23 (8th Dist.), quoting *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27, citing *Black's Law Dictionary* 1442 (8th Ed.2004). "A party must establish standing to sue before a court can consider the merits of a legal claim." *Id.*, citing *Ohio Contrs. Assn. v. Bicking*, 71 Ohio St.3d 318, 320, 643 N.E.2d 1088 (1994). "'To have standing, a party must have a personal stake in the outcome of a legal controversy with an adversary.'" *Id.*, quoting *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 9, citing *Ohio Pyro, Inc.* at ¶ 27. "The lack of standing may require a court to dismiss an action." *Id.*, citing *Thies v. Wheelock*, 2017-Ohio-8605, 100 N.E.3d 903, ¶ 10 (2d Dist.).

**{¶16}** "In order for [Paluscsak] to establish standing, he must show he suffered '(1) an injury that is (2) fairly traceable to the appellees' allegedly unlawful conduct, and (3) likely to be redressed by the requested relief.'" *Id.* at ¶ 24, quoting

*Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "These three factors comprise the constitutional minimum for standing." *Id.*, citing *Lujan* at 560. "Finally, '[i]t is well settled that standing does not depend on the merits of the plaintiff's contention that particular conduct is illegal or unconstitutional. Rather, standing turns on the nature and source of the claim asserted by the plaintiff.'" *Id.,* citing *Moore* at ¶ 23, citing *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

{¶17} Paluscsak asserts that he has suffered injury from paying his attorney fees and his usage of vacation time to fight this case. Paluscsak's injuries "'must be concrete and not simply abstract or suspected' to be compensable." *Cronin v. Governor of Ohio*, 2022-Ohio-829, 186 N.E.3d 851, ¶ 17 (8th Dist.), quoting *Ohio Contrs. Assn.* at 320. "Further, an injury that is borne by the population in general, and which does not affect the plaintiff in particular, is not sufficient to confer standing." *Id.*, citing *State ex rel. Walgate v. Kasich*, 2013-Ohio-946, 989 N.E.2d 140, ¶ 11 (10th Dist.), *rev'd on other grounds*, 147 Ohio St.3d 1, 2016-Ohio-1176, 59 N.E. 3d 1240. "To show standing, a private litigant

> 'must generally show that he or she has suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general, that the law in question has caused the injury, and that the relief requested will redress the injury.'"

*Id.* at ¶ 17, quoting *Bowers v. Ohio State Dental Bd.*, 142 Ohio App.3d 376, 380, 755 N.E.2d 948 (10th Dist.2001), quoting *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 469-470, 715 N.E.2d 1062 (1999).

{¶18} Paluscsak's arguments are misplaced and do not demonstrate the proper definition of an injury. In order to have standing, Paluscsak must demonstrate that he was injured by the appellees' usage of the name St. Vincent Charity versus St. Vincent Charity Medical Center. Instead, Paluscsak argued that he was injured from having to pursue this lawsuit. Paluscsak has not demonstrated he suffered an injury as a result of the use of the hospital's nickname. The facts are Paluscsak received an MRI and subsequently did not render payment for the service. The bill was turned over to a collection agency, who filed a complaint against Paluscsak for payment. There was no showing of a direct or concrete injury that Paluscsak suffered from omitting "Medical Center" from the complaint.

{¶19} Therefore, Paluscsak's first assignment of error is overruled.

## C. R.C. 1319.12 and Unauthorized Practice of Law

{¶20} In Paluscsak's second assignment of error, he argues that the trial court erred by refusing to consider claims based on collection actions taken in violation of R.C. 1319.12 and the unauthorized practice of law. Specifically, Paluscsak contends that there is no direct attorney-client relationship between SVCMC and the Gusses because UCB selected the attorney and has the sole right

to receive the proceeds of collection. As a result, Paluscsak claims that SVCMC is misrepresenting its interest and the relationship between the appellees.

{¶21} "'When a collection agency engages in the unauthorized practice of law, it constitutes an "action that cannot legally be taken" within the meaning of the FDCPA.'" *Capital One Bank (USA), NA v. Reese*, 11th Dist. Portage No. 2014-P-0034, 2015-Ohio-4023, ¶ 90, quoting *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783, 804 (S.D.Ohio 2006). *See, e.g.*, *Poirier v. Alco Collections, Inc.*, 107 F.3d 347 (5th Cir. 1997) (holding that collections agency violated 15 U.S.C. 1692e(5) when it engaged in the unauthorized practice of law by instituting a lawsuit against a debtor since the debt had not been properly assigned).

{¶22} Paluscsak's argument is misplaced because he fails to demonstrate how UCB, as a collection agency, did not adhere to R.C. 1319.12(B) and (C), which state:

> (B) A collection agency with a place of business in this state may take assignment of another person's accounts, bills, or other evidences of indebtedness in its own name for the purpose of billing, collecting, or filing suit in its own name as the real party in interest.
>
> (C) No collection agency shall commence litigation for the collection of an assigned account, bill, or other evidence of indebtedness unless it has taken the assignment in accordance with all of the following requirements:
>
>> (1) The assignment was voluntary, properly executed, and acknowledged by the person transferring title to the collection agency.

(2) The collection agency did not require the assignment as a condition to listing the account, bill, or other evidence of indebtedness with the collection agency for collection.

(3) The assignment was manifested by a written agreement separate from and in addition to any document intended for the purpose of listing the account, bill, or other evidence of indebtedness with the collection agency. The written agreement shall state the effective date of the assignment and the consideration paid or given, if any, for the assignment and shall expressly authorize the collection agency to refer the assigned account, bill, or other evidence of indebtedness to an attorney admitted to the practice of law in this state for the commencement of litigation. The written agreement also shall disclose that the collection agency may consolidate, for purposes of filing an action, the assigned account, bill, or other evidence of indebtedness with those of other creditors against an individual debtor or co-debtors.

(4) Upon the effective date of the assignment to the collection agency, the creditor's account maintained by the collection agency in connection with the assigned account, bill, or other evidence of indebtedness was canceled.

{¶23} Paluscsak also fails to demonstrate how the Gusses engaged in the unauthorized practice of law. He simply states that the "Gusses knowingly enabled the unauthorized practice of law by UCB," and that "there is no direct attorney client relationship between the alleged real party in interest (SVCMC) and the lawyer (Gusses) prosecuting the lawsuit." We find that Paluscsak's arguments are misplaced because SVCMC voluntarily dismissed its action against him and UCB complied with R.C. 1319.12 by filing suit in its own name as the real party in interest. Additionally, the Gusses did not engage in the unauthorized practice of law because they filed suit on behalf of UCB, not SVCMC. Attorneys and law firms

do not engage in the unauthorized practice of law by instituting a legal action to collect on a debt against the debtor, because they file the action on behalf of the creditor rather than for themselves. *See Reese* at ¶ 91.

**{¶24}** Therefore, Paluscsak's second assignment of error is overruled.

## D.    Incorrect Location for Filing of Claim

**{¶25}** In Paluscsak's third assignment of error, he argues that the trial court committed prejudicial error in finding that the appellees did not violate the FDCPA by filing a collection lawsuit in a court district where he did not reside. The initial action filed by the appellees was filed in Cleveland Municipal Court and Paluscsak resides in Garfield Heights. He argues that the failure to file in Garfield Heights Municipal Court violates 15 U.S.C. 1692i, which states:

> Any debt collector who brings any legal action on a debt against any consumer shall —
>
> > (1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or
> >
> > (2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity —
> >
> > > (A) in which such consumer signed the contract sued upon; or
> > >
> > > (B) in which such consumer resides at the commencement of the action.

**{¶26}** The case was moved to the common pleas court in Cuyahoga County, the county in which Garfield Heights is located, in accordance with R.C. 1319.12(D), which states:

> A collection agency shall commence litigation for the collection of an assigned account, bill, or other evidence of indebtedness in a court of competent jurisdiction located in the county in which the debtor resides, or in the case of co-debtors, a county in which at least one of the co-debtors resides.

**{¶27}** Further, Paluscsak did not object to the case being filed in Cleveland Municipal Court, but rather filed counterclaims. Because Paluscsak did not object to the action being initiated in Cleveland in his response and counterclaims, we will review for plain error. "Crim.R. 52 affords appellate courts 'limited power' to correct plain errors that occurred during the trial court proceeding." *State v. Pugh*, 8th Dist. Cuyahoga No. 111099, 2022-Ohio-3038, ¶ 18, citing *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 9.

**{¶28}** Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Under the plain-error standard, "the defendant bears the burden of 'showing that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice.'" *State v. West*, 168 Ohio St.3d 605, 2022-Ohio-1556, 200 N.E.3d 1048, ¶ 22, quoting *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16.

{¶29} The case was moved to the common pleas court, which has the jurisdiction to hear the case because he resides in Cuyahoga County. Additionally, SVCMC voluntarily dropped their complaint from the municipal court; thus, the county court had the proper jurisdiction.

{¶30} Therefore, Paluscsak's third assignment of error is overruled.

### E. FDCPA and OCSPA Violations

{¶31} In Paluscsak's fourth and fifth assignments of error, he argues that the trial court erred when it failed to find that the appellees violated the FDCPA and OCSPA by filing a lawsuit under St. Vincent Charity rather than St. Vincent Charity Medical Center. Paluscsak further claims that the filing constituted a false, deceptive, or misleading representation on the part of the appellees, in violation of 15 U.S.C. 1692e(5), which states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

{¶32} Paluscsak does not demonstrate that the appellees used any false, deceptive, or misleading representations in order to get him to pay the outstanding bill. *See Stout v. Columbia Gas of Ohio, Inc.*, 2d Dist. Clark No. 2020-CA-42, 2021-Ohio-609, where Stout filed a verified complaint against defendants, alleging

abuse of process, defamation, violations of the Fair Debt Collection Practices Act and the Consumer Sales Practices Act. The *Stout* Court held "an attorney can only be held liable if he acts maliciously and has an ulterior purpose which is completely separate from his client's interest." *Id*. at ¶ 72. "[T]he ulterior motive contemplated by an abuse of process claim generally involves an attempt to gain an advantage outside the proceeding, using the process itself as the threat." *Id*. at ¶ 76, quoting *Sivinsky v. Kelley*, 8th Dist. Cuyahoga No. 94296, 2011-Ohio-2145, ¶ 36. Paluscsak has failed to establish an ulterior motive outside the process itself to obtain payment on the account. *Id*. at ¶ 78.

**{¶33}** Additionally, we previously determined that Paluscsak lacked standing to bring an action under FDCPA and OCSPA regarding the use of the abbreviated name, St. Vincent Charity, because he failed to demonstrate he suffered an injury as a result.

**{¶34}** Therefore, Paluscsak's fourth and fifth assignments of error are overruled.

## III. Motion to Compel

### A. Standard of Review

**{¶35}** "We review a trial court's decision to grant or deny a motion to compel for an abuse of discretion." *United States Specialty Sports Assn. v. Majni*, 8th Dist. Cuyahoga No. 110830, 2022-Ohio-3035, ¶ 14, citing *Wolnik v. Matthew J. Messina, DDS, Inc.*, 8th Dist. Cuyahoga No. 88139, 2007-Ohio-1446, ¶ 15.

**{¶36}** "The Ohio Supreme Court recently explained that an abuse of discretion 'involves more than a difference in opinion * * *.'" *State v. Price*, 8th Dist. Cuyahoga No. 111921, 2023-Ohio-3790, ¶ 32, quoting *State v. Weaver*, 171 Ohio St.3d 429, 2022-Ohio-4371, 218 N.E.3d 806, ¶ 24. "That is, a trial court's judgment that is 'profoundly and wholly violative of fact and reason' constitutes an abuse of discretion." *Id.*

**B.    Law and Analysis**

**{¶37}** In Paluscsak's sixth assignment of error, he argues that the trial court abused its discretion in denying his motions to compel discovery from UCB and the Gusses regarding their contractual relationships and communications about actions taken against him.  On August 26, 2021, Paluscsak filed a motion to compel discovery from the Gusses and, on September 20, 2021, filed the same motion against UCB. On December 13, 2021, the trial court denied both motions.  "Courts have broad discretion over discovery matters." *Huntington Natl. Bank v. Dixon*, 8th Dist. Cuyahoga No. 101273, 2015-Ohio-1735, ¶ 19, citing *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 116 Ohio St.3d 88, 2007-Ohio-5542, 876 N.E.2d 913, ¶ 18.  Paluscsak has not demonstrated how the trial court abused its discretion in its denial of his motion to compel attorney-client communications.

**{¶38}** UCB hired the Gusses to file a debt collection action against Paluscsak. UCB entered into a written attorney-client agreement and provided that

agreement to Paluscsak, who continually argues that there is no agreement between the parties. Further, Paluscsak has not demonstrated why the communications between client UCB and attorneys the Gusses are essential to his case or claims. Additionally, the communications are considered privileged. "'The attorney-client privilege is one of the oldest recognized privileges for confidential communications.'" *Total Quality Logistics, LLC v. BBI Logistics LLC*, 12th Dist. Clermont No. CA2021-04-012, 2022-Ohio-1440, ¶ 19, quoting *Swidler & Berlin v. United States*, 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998). "It 'exempts from the discovery process certain communications between attorneys and their clients.'" *Id.*, quoting *Cargotec, Inc. v. Westchester Fire Ins. Co.*, 155 Ohio App.3d 653, 2003-Ohio-7257, 802 N.E.2d 732, ¶ 7 (6th Dist.).

**{¶39}** Therefore, Paluscsak's sixth assignment of error is overruled.

**{¶40}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

ANITA LASTER MAYS, ADMINISTRATIVE JUDGE

MICHELLE J. SHEEHAN, J., and
SEAN C. GALLAGHER, J., CONCUR