JOURNAL ENTRY AND OPINION
{¶ 1} Kenneth J. Wolnik II, D.D.S. ("Dr. Wolnik") appeals from the trial court's decision to grant summary judgment in favor of Matthew J. Messina, D.D.S., Inc., and Matthew J. Messina (hereinafter "Dr. Messina"). Dr. Wolnik argues that genuine issues of material fact remain to be litigated concerning the breach of the parties' business contract. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} The instant appeal arose from the partial sale of a dental practice. Dr. Messina owned and operated two dental offices, one in Berea and one in Fairview Park. Dr. Messina maintained a full staff of clerical personnel and hygienists at both offices and created a schedule that allowed him to work out of each. Although Dr. Messina worked out of both offices, each office had a set of patients who would regularly visit one specific office. However, Dr. Messina explained that it would not *Page 3 
be unusual for a patient who went to the Berea office to be seen at the Fairview Park office and vice versa.
 {¶ 3} At some point in 2002, Dr. Messina decided to sell the Berea practice and focus his practice out of the Fairview Park office. In order to help him sell the Berea office, Dr. Messina entered into an agreement with Aftco to offer the Berea practice for sale. The parties entered into the agreement on December 20, 2002, giving Aftco the exclusive right to sell the practice. Aftco then evaluated the Berea practice and set the practice's fair market value at $260,000.
 {¶ 4} In January 2003, Dr. Wolnik approached Aftco to represent him in the purchase of a dental practice. Aftco informed Dr. Wolnik that they would represent him, the buyer, and also the seller of any practice. The dual brokerage arrangement initially troubled Dr. Wolnik. However, after Aftco informed him that they had the best success for negotiating practice sales when they worked with both dentists, Dr. Wolnik entered into an agreement with Aftco.
 {¶ 5} Thereafter, Aftco made every effort to sell Dr. Messina's Berea practice to Dr. Wolnik. Aftco provided Dr. Wolnik with information about Dr. Messina's dental practice, and Dr. Wolnik was even given an opportunity to enter the Berea office and review the office charts. After visiting the office, Dr. Wolnik decided to pursue the purchase of the Berea practice. *Page 4 
 {¶ 6} From that point on, all communications between Drs. Messina and Wolnik went through Aftco. During the negotiation process, Dr. Wolnik's primary concern was how many patients would remain with the Berea practice. Dr. Wolnik admitted that Dr. Messina never told him anything about how many patients would stay. However, Aftco did inform him that Dr. Messina's Berea office had a dental practice of 1500 patients and that as many as 300 would want to stay with Dr. Messina. That number later grew to between 400 and 600 patients who would stay with Dr. Messina. Because no one knew how many patients would stay with the Berea office, the parties negotiated the selling price down to $110,000.
 {¶ 7} After reaching an agreement on price, the parties determined there would be a transition period, during which time Dr. Messina would continue to work out of the Berea office for a period of up to six months. Additionally, the parties were to send out a letter notifying all of the Berea patients that Dr. Wolnik purchased the practice. The parties then executed the asset purchase agreement, which included a nonsolicitation provision and a liquidated damages provision.
 {¶ 8} On July 14, 2003, Dr. Wolnik took possession of the Berea office. Problems arose immediately, initially due to the fact that the letter informing the patients of the sale of the practice did not go out until after Dr. Wolnik took possession. Additionally, although Dr. Messina planned on working out of the Berea office until the end of 2003, Aftco never informed Dr. Wolnik of such and therefore, *Page 5 
no transition between doctors took place at the Berea office. Finally, the Berea office's phone and voicemail system had problems, causing the patients a great deal of confusion.
 {¶ 9} In the end, only 200 of the original 1500 patients remained with the Berea office. Some of the patients who left the Berea office elected to see Dr. Messina at the Fairview office, and some patients elected to see another dentist. After the majority of the Berea office's patients left, Dr. Wolnik claimed that Dr. Messina violated the nonsolicitation provision of the asset purchase agreement.
 {¶ 10} On September 9, 2004, Dr. Wolnik filed a complaint against Dr. Messina and Aftco, the brokerage firm that entered into the dual brokerage agreement with both doctors. Dr. Wolnik's complaint alleged eight causes of action, although the focus of his litigation was on his claim that Dr. Messina violated the nonsolicitation clause of the asset purchase agreement.
 {¶ 11} After Dr. Wolnik served his complaint, counsel for Dr. Messina took leaves to plead and filed motions for extensions of time, in an effort to resolve the matter. When the parties could not reach a resolution on their own, the trial court referred the matter to mediation. One day before the mediation, Dr. Wolnik voluntarily dismissed Aftco from the litigation.
 {¶ 12} Dr. Messina eventually filed an answer denying all claims, raised affirmative defenses and filed a counterclaim. Thereafter, the parties filed cross-motions *Page 6 
for summary judgment, each alleging that no genuine issue of material fact remained to be litigated as to each cause of action. On April 6, 2006, the trial court denied Dr. Wolnik's motion for summary judgment and granted Dr. Messina's motion for summary judgment on all of Dr. Wolnik's claims. Dr. Messina voluntarily dismissed his counterclaim without prejudice the following day.
 {¶ 13} Dr. Wolnik appeals, raising the two assignments of error contained in the appendix to this opinion.
 {¶ 14} In his first assignment of error, Dr. Wolnik argues that the trial court erred when it denied his motion to compel. This assignment of error lacks merit.
 {¶ 15} Our standard of review for decisions on motions to compel is the abuse of discretion standard. Folmar v. Griffin, Delaware App. No. 2005CAE080057, 2006-Ohio-1849. An abuse of discretion requires more than an error of law or judgment, it implies that the court's attitude was arbitrary, unreasonable or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217.
 {¶ 16} In this assignment of error, Dr. Wolnik argues that Dr. Messina failed to comply with Civ.R. 34 by not producing specific phone records. Specifically, Dr. Wolnik alleged that Dr. Messina solicited the Berea patients over the phone and convinced them to see Dr. Messina at his Fairview Park office. Dr. Wolnik claimed that detailed phone records showing all incoming and outgoing calls during 2002 and *Page 7 
2003 would support his argument. After Dr. Wolnik did not get the requested phone records, he filed a motion to compel.
 {¶ 17} Dr. Wolnik's reliance on Civ.R. 34 is misplaced. Civ.R. 34 provides for the production of documents, "that are in the possession, custody, or control of the party upon whom the request is served." Dr. Messina maintains that the specific phone records sought by Dr. Wolnik never existed. The trial court record supports Dr. Messina's claim. In his reply brief to Dr. Wolnik's motion to compel, Dr. Messina stated that he did not have the phone records and therefore, could not produce them. Additionally, Dr. Messina points to a letter drafted by his counsel, which informed Dr. Wolnik of the following: Dr. Messina produced what business phone records he had, Dr. Messina did not possess records that reflected local phone calls to and from the office, and that account representatives for SBC phone service did not have records detailing local phone calls in and out of the office.
 {¶ 18} As there is no basis in law to compel phone records that do not exist, we agree with the trial court's decision denying Dr. Wolnik's motion to compel. Dr. Wolnik's first assignment of error is overruled.
 {¶ 19} In his second assignment of error, Dr. Wolnik argues the trial court erred when it granted summary judgment in favor of Dr. Messina. This assignment of error is without merit. *Page 8 
 {¶ 20} We review an appeal from summary judgment under a de novo standard of review. Baiko v. Mays (2000), 140 Ohio App.3d 1. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. Id. See, also, Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704. Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion, which is adverse to the nonmoving party. Temple v. Wean United, Inc. (1997),50 Ohio St.2d 317.
 {¶ 21} The moving party carries the initial burden of setting forth specific facts that demonstrate his entitlement to summary judgment.Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107. If the movant fails to meet this burden, summary judgment is not appropriate. Id. If the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. Id.
 {¶ 22} We first note that Dr. Wolnik limits his appeal to the trial court's decision granting summary judgment on his claims of breach of contract and tortious interference with a business relationship. These claims arose from Dr. Messina's alleged solicitation of Dr. Wolnik's Berea patients. Because Dr. Wolnik limits his *Page 9 
appeal to this issue we will not address any of the six other claims set forth in his complaint.
 {¶ 23} In the present case, the parties signed an asset purchase agreement that contained a nonsolicitation clause and a liquidated damages provision. The agreement provides as follows: "Therefore, the parties agree that any intentional, material breach by the Covenanter of this Restrictive Covenant Agreement shall result in the Covenanter being required to immediately pay. * * *." Accordingly, in order to collect liquidated damages, Dr. Wolnik must establish that Dr. Messina committed an intentional, material breach.
 {¶ 24} Dr. Messina has established that no genuine issue of material fact remains to be litigated. Dr. Messina cites to Dr. Wolnik's deposition testimony wherein Dr. Wolnik admitted that he assumed there must have been a solicitation of the patients because he lost so many. Additionally, Dr. Wolnik, in his deposition, claimed that Dr. Messina's office staff instructed the Berea patients to schedule appointments in the Fairview Park office. However, Dr. Wolnik did not provide any evidentiary support for this allegation. Moreover, Dr. Messina's deposition testimony established that he instructed his office staff not to solicit patients and that he himself never solicited a patient from the Berea office. Dr. Messina did admit that during the chaotic period following Dr. Wolnik's possession of the Berea office, he did receive phone calls from Berea patients, but denied responding to them. *Page 10 
 {¶ 25} In an attempt to overcome the grant of summary judgment, Dr. Wolnik cites to the affidavit of Richard Vaccariello, a patient of the Berea office. Mr. Vaccariello's affidavit reads as follows: "After Dr. Wolnik purchased the Berea practice from Dr. Messina, Dr. Messina's office attempted to solicit my business away from Dr. Wolnik."
 {¶ 26} Even with the Vaccariello affidavit, we find that Dr. Wolnik failed to establish the existence of a genuine issue of material fact. Dr. Wolnik's deposition testimony reveals that he has no evidence that Dr. Messina solicited patients from the Berea office. Dr. Wolnik admitted that he assumed Dr. Messina solicited patients because he lost so many. Dr. Wolnik could not establish where the 1300 patients went and admitted that some went to other offices not belonging to Dr. Messina. Additionally, Dr. Wolnik's claim that Dr. Messina's employees instructed Berea patients to schedule appointments at the Fairview Park office was not supported by any evidence outside of Richard Vaccariello's affidavit. Although the affidavit demonstrates the solicitation of one patient, this does not rise to the level of an intentional, material breach. Moreover, Dr. Messina testified in his deposition that he instructed his staff not to solicit any patients and that he never solicited a patient.
 {¶ 27} Based on the above, we conclude that the trial court properly granted summary judgment in favor of Dr. Messina. Dr. Wolnik's second and final assignment of error is overruled. *Page 11 
 {¶ 28} The judgment of the trial court is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., CONCURS
CHRISTINE T. MCMONAGLE, J., DISSENTS (SEE SEPARATE DISSENTING OPINION)
 APPENDIX
Assignments of Error: "I. The trial court abused its discretion in denying plaintiff-appellee's motion to compel.
 II. The trial court erred in granting appellees' motion for summary judgment."