[Please see vacated opinion at 2023-Ohio-4641.]

# COURT OF APPEALS OF OHIO
# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

ST. VINCENT CHARITY,　　　　　　:

　　Plaintiff-Appellee,　　　　:

　　　　　　　　　　　　　　　　　　No. 111932

　　v.　　　　　　　　　　　　:

MICHAEL PALUSCSAK,　　　　　　:

　　Defendant-Appellant.　　　:

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 8, 2024

---

Civil Appeal from the Cuyahoga County Common Pleas Court
Case No. CV-18-898214

---

### *Appearances:*

Davis & Young, Matthew P. Baringer, and Thomas W. Wright, *for appellee* St. Vincent Charity.

Porter Wright Morris & Arthur, L.L.P., Tracey L. Turnbull, and Jared M. Klaus, *for appellee* United Collection on Bureau, Inc.

The Law Office of Boyd W. Gentry, Boyd W. Gentry, and Zachary P. Elliott, *for appellees* George Gusses Co., L.P.A., George Gusses, Robin A. Worline, and Joseph T. Szyperski.

Robert S. Belovich, L.L.C., and Robert S. Belovich; The Misra Law Firm, L.L.C., and Anand N. Misra, *for appellant*.

ON RECONSIDERATION[1]

ANITA LASTER MAYS, J.:

**{¶1}** Pursuant to App.R. 26(A)(1)(a), defendant-appellant, Michael Paluscsak ("Paluscsak"), has filed an application for reconsideration of this court's opinion in *St. Vincent Charity v. Paluscsak*, 2023-Ohio-4641 (8th Dist.). Upon review, appellant's motion for reconsideration is granted.

**{¶2}** Paluscsak appeals the trial court's decision granting summary judgment to the plaintiffs-appellees St. Vincent Charity Medical Center ("SVCMC"), United Collection Bureau, Inc. ("UCB"); and attorneys George Gusses, Robin Worline, and Joseph Szperski and their law firm, George Gusses Co. LPA, collectively known as "the Gusses." We affirm the trial court's decision.

## I.     Facts and Procedural History

**{¶3}** In September 2015, Paluscsak had an MRI performed on his knee at SVCMC. He was billed $1,175.40 for the procedure, but he did not pay it. After the bill went unpaid for 18 months, SVCMC referred the account to UCB for collections. On June 2, 2017, UCB sent a collections letter to Paluscsak and the Gusses were hired to file a debt collection action against Paluscsak. On July 11, 2019, the Gussses filed a lawsuit.

---

[1] The opinion released by this court on December 21, 2023, *St. Vincent Charity v. Paluscsak*, 2023-Ohio-4641 (8th Dist.), is hereby vacated and substituted with this opinion.

{¶4} On August 14, 2017, Paluscsak filed an answer to the Gusses' complaint and filed counterclaims on behalf of a putative class based on the Fair Debt Collection Practices Act ("FDCPA") and the Ohio Consumer Sales Practices Act ("OCSPA"). Paluscsak claimed that the appellees committed fraud and abuses of process because the debt collection was initiated in the name of "St. Vincent Charity" and not the formal name "St. Vincent Charity Medical Center." Paluscsak argued in his counterclaim that the letters from UCB and the Gusses falsely stated that he owed money to St. Vincent Charity when the entity does not exist. Further, Paluscsak contended that the Gusses signed a complaint on behalf of St. Vincent Charity, omitting the words "Medical Center" in an effort to cheat unsuspecting and unsophisticated consumers.

{¶5} Although Paluscsak did not file an objection, he claims that the Gusses violated the FDCPA because they filed the complaint in Cleveland Municipal Court instead of Garfield Heights Municipal Court, where he resides. However, the matter proceeded in the Cleveland Municipal Court.

{¶6} After the filing of the complaint and counterclaim, several motions were filed and ruled upon. SVCMC dismissed its complaint against Paluscsak in municipal court, leaving Paluscsak's counterclaim as the sole issue. UCM filed a motion to certify the case to the Cuyahoga County Common Pleas Court ("trial court"). The municipal court granted the motion because the amount in

Paluscsak's counterclaim exceeded the jurisdiction of the municipal court. On May 22, 2018, the case was transferred to the trial court.

{¶7} On June 19, 2018, Paluscsak moved for default judgment against the appellees. SVCMC filed a motion for leave to file an answer to the counterclaim. The trial court granted SVCMC's motion, but denied Paluscsak's motion for default judgment. On July 10, 2018, the trial court also dismissed Paluscsak's claims for fraud and abuse of process. On August 14, 2018, the trial court dismissed Paluscsak's counterclaim against the appellees for fraud and abuse of process and denied the motion with respect to the FDCPA and OCSPA claims.

{¶8} Trial court dismissed Paluscsak's case because his counsel failed to appear. Paluscsak filed an appeal in *St. Vincent Charity v. Paluscsak*, 2020-Ohio-1501 (8th Dist.) ("*Paluscsak I*"), where the court reversed the trial court's decision, stating: "The trial court abused its discretion in dismissing appellant's counterclaim for failure to prosecute based on appellant's failure to participate in the May 7, 2019 phone conference." *Id*. at ¶ 49.

{¶9} On September 14, 2020, the trial court ordered Paluscsak to appear in person for a deposition on October 1, 2020. Paluscsak appealed the order to this court and subsequently to the Supreme Court, and both appeals were dismissed. On August 26, 2021, Paluscsak filed a motion to compel discovery from the Gusses, and, on September 20, 2021, filed the same motion against UCB. On December 13, 2021, the trial court denied both motions.

{¶10} On January 10, 2022, UCB and the Gusses filed motions for summary judgment, with SVCMC filing to join the summary judgment motions. The motions argued that Paluscsak does not have standing because he admitted that he had not suffered any injury as a result of UCB's use of SVCMC's abbreviated name of St. Vincent Charity and that the use of the abbreviated name was not false, deceptive, or misleading. The motions also argued that Paluscsak's FDCPA and OCSPA claims fail as a matter of law.

{¶11} On August 15, 2022, the trial court granted the appellees' summary judgment motions. The trial court reasoned that Paluscsak had no standing because he was not injured by the use of the nickname or because the case was filed in Cleveland instead of Garfield Heights. The trial court also reasoned that Paluscsak's claims under FDCPA and OCSPA fail as a matter of law because he did not demonstrate he was injured.

{¶12} Paluscsak filed this appeal and assigned six assignments of error for our review:

1. The trial court committed prejudicial error in holding that Paluscsak lacked standing to bring his counterclaim;

2. The trial court committed prejudicial error in refusing to consider claims on collection actions taken in violation of R.C. 1319.12 and the resulting unauthorized practice of law;

3. The trial court committed prejudicial error in finding that counterclaim defendants did not violate the FDCPA by filing a collection lawsuit in a court district where Paluscsak did not reside or where he did not sign a contract on which the collection claim was based;

4. The trial court committed prejudicial error in finding the counterclaim defendants did not violate the FDCPA by filing a collection lawsuit in the name of an unregistered fictitious name;

5. The trial court committed prejudicial error in concluding that the counterclaim defendants did not violate the OCSPA; and

6. The trial court abused its discretion and prejudicial error in denying Paluscsak's motion to compel.

## II. Summary Judgment

### A. Standard of Review

{¶13} Under Civ.R. 56(C), summary judgment is appropriate when "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably to the party against whom the motion is made, reasonable minds can only reach a conclusion that is adverse to the nonmoving party." *Chester/12 Ltd. v. Epiq Constr. Servs.*, 2023-Ohio-1886, ¶ 17 (8th Dist.), citing *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370 (1998); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶14} "The moving party has the initial burden of setting forth specific facts that demonstrate its entitlement to summary judgment." *Id.* at ¶ 18, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). "If the moving party fails to meet this burden, summary judgment is not appropriate." *Id.* "If the moving party meets this burden, the nonmoving party has a reciprocal burden of setting forth specific

facts using evidence permitted by Civ.R. 56(C) to show that there is a genuine issue for trial." *Id.* "Summary judgment is appropriate if the nonmoving party fails to meet this burden." *Id.*

**{¶15}** "We review the trial court's judgment de novo, using the same standard that the trial court applies under Civ.R. 56(C)." *Id.* at 19, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "Accordingly, we stand in the shoes of the trial court and conduct an independent review of the record." *Id.*

## B.    Standing

**{¶16}** In Paluscsak's first assignment of error, he argues that the trial court committed prejudicial error holding that he lacked standing to bring his counterclaim. "'Standing' is defined as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.'" *Torrance v. Rom*, 2020-Ohio-3971, ¶ 23 (8th Dist.), quoting *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 2007-Ohio-5024, ¶ 27, citing *Black's Law Dictionary* (8th Ed. 2004). "A party must establish standing to sue before a court can consider the merits of a legal claim." *Id.*, citing *Ohio Contrs. Assn. v. Bicking*, 71 Ohio St.3d 318, 320 (1994). "'To have standing, a party must have a personal stake in the outcome of a legal controversy with an adversary.'" *Id.*, quoting *Kincaid v. Erie Ins. Co.*, 2010-Ohio-6036, ¶ 9, citing *Ohio Pyro* at ¶ 27. "The lack of standing may require a court to dismiss an action." *Id.*, citing *Thies v. Wheelock*, 2017-Ohio-8605, ¶ 10 (2d Dist.).

{¶17} In order for Paluscsak to establish standing, "he must show he suffered '(1) an injury that is (2) fairly traceable to the appellees' allegedly unlawful conduct, and (3) likely to be redressed by the requested relief.'" *Id.* at ¶ 24, quoting *Moore v. Middletown*, 2012-Ohio-3897, ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). "These three factors comprise the constitutional minimum for standing." *Id.*, citing *Lujan* at 560. "Finally, '[i]t is well settled that standing does not depend on the merits of the plaintiff's contention that particular conduct is illegal or unconstitutional. Rather, standing turns on the nature and source of the claim asserted by the plaintiff.'" *Id.,* citing *Moore* at ¶ 23, citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

{¶18} Paluscsak asserts that he has suffered injury from paying his attorneys fees and his usage of vacation time to fight this case. Paluscsak's injuries "'must be concrete and not simply abstract or suspected' to be compensable." *Cronin v. Governor of Ohio*, 2022-Ohio-829, ¶ 17 (8th Dist.), quoting *Ohio Contrs. Assn. v. Bicking*, 71 Ohio St.3d 318, 320 (1994). "Further, an injury that is borne by the population in general, and which does not affect the plaintiff in particular, is not sufficient to confer standing." *Id.*, citing *State ex rel. Walgate v. Kasich*, 2013-Ohio-946, ¶ 11 (10th Dist.), *rev'd on other grounds*, 2016-Ohio-1176. "To show standing, a private litigant

> "must generally show that he or she has suffered or is threatened with
> direct and concrete injury in a manner or degree different from that

suffered by the public in general, that the law in question has caused the injury, and that the relief requested will redress the injury.'"

*Id.*, quoting *Bowers v. Ohio State Dental Bd.*, 142 Ohio App.3d 376, 380 (10th Dist. 2001), quoting *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 469-70 (1999).

**{¶19}** Paluscsak's arguments are misplaced and do not demonstrate the proper definition of an injury. In order to have standing, Paluscsak must demonstrate that he was injured by the appellee's use of the name St. Vincent Charity versus St. Vincent Charity Medical Center. Instead, Paluscsak argued that he was injured from having to pursue this lawsuit. However, Paluscsak has not demonstrated he suffered an injury as a result of the use of the hospital's nickname. The facts are Paluscsak received an MRI and did not pay for it. The bill was turned over to a collection agency, who filed a complaint against Paluscsak for payment. There was not any injury that Paluscsak suffered from the filing omitting "Medical Center" from the complaint. Thus, Paluscsak does not have common law standing.

**{¶20}** However, Paluscsak further claims that he has statutory standing. "In addition to standing authorized by common law, standing may also be conferred by statute." *ProgressOhio.org, Inc. v. JobsOhio*, 2014-Ohio-2382, ¶ 17, citing *Middletown v. Ferguson*, 25 Ohio St.3d 71, 75 (1986). Paluscsak contends that under the FDCPA and OCSPA, he has standing because he had to defend himself against the lawsuit, the Cleveland Municipal Court had no jurisdiction over

the case filed against him, and SVCMC used a fictitious name. Under the FDCPA

and OCSPA, a consumer has a cause of action and is entitled to relief as follows:

> (A) Where the violation was an act prohibited by section 1345.02, 1345.03, or 1345.031 of the Revised Code, the consumer may, in an individual action, rescind the transaction or recover the consumer's actual economic damages plus an amount not exceeding five thousand dollars in noneconomic damages.
>
> (B) Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02, 1345.03, or 1345.031 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater, plus an amount not exceeding five thousand dollars in noneconomic damages or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended.

R.C. 1345.09.

**{¶21}** Paluscsak does not demonstrate that there was a violation under this

statute. He does not demonstrate that under R.C. 1345.02, SVCMC committed an

unfair or deceptive act or practice in connection with a consumer transaction.

Further, he does not demonstrate that under R.C. 1345.03, SVCMC committed an

unconscionable act or practice in connection with a consumer transaction. Nor

does Paluscsak demonstrate that under R.C. 1345.031, SVCMC committed an

unconscionable act or practice concerning a consumer transaction in connection

with the origination of a residential mortgage. Further, Paluscsak's claim that he has statutory standing because the case was filed in the wrong court will be discussed later in the opinion. Thus, his statutory standing arguments fail under the FDCPA and OCSPA.

{¶22} Therefore, Paluscsak's first assignment of error is overruled.

## C.    R.C. 1319.12 and Unauthorized Practice of Law

{¶23} In Paluscsak's second assignment of error, he argues that the trial court erred by refusing to consider claims based on collection actions taken in violation of R.C. 1319.12 and the unauthorized practice of law. Specifically, Paluscsak contends that there is no direct attorney-client relationship between SVCMC and the Gusses because UCB selected the attorney and has the sole right to receive the proceeds of collection. As a result, Paluscsak claims that SVCMC is misrepresenting its interest and the relationship between the appellees. UCB was never assigned the debt; they were simply hired to collect the debt. SVCMC remained the owners of the debt.

{¶24} "'When a collection agency engages in the unauthorized practice of law, it constitutes an "action that cannot legally be taken" within the meaning of the FDCPA.'" *Capital One Bank (USA), NA v. Reese*, 2015-Ohio-4023, ¶ 90 (11th Dist.), quoting *Poirier v. Alco Collections, Inc.*, 107 F.3d 347 (5th Cir. 1997) (holding that collections agency violated Section 1692e(5) when it engaged in the

unauthorized practice of law by instituting a lawsuit against a debtor since the debt had not been properly assigned).

{¶25} Paluscsak's argument is misplaced because he fails to demonstrate how UCB, as a collection agency, did not adhere to R.C. 1319.12(B) and (C), which state:

> (B) A collection agency with a place of business in this state may take assignment of another person's accounts, bills, or other evidences of indebtedness in its own name for the purpose of billing, collecting, or filing suit in its own name as the real party in interest.
>
> (C) No collection agency shall commence litigation for the collection of an assigned account, bill, or other evidence of indebtedness unless it has taken the assignment in accordance with all of the following requirements:
>
> > (1) The assignment was voluntary, properly executed, and acknowledged by the person transferring title to the collection agency.
> >
> > (2) The collection agency did not require the assignment as a condition to listing the account, bill, or other evidence of indebtedness with the collection agency for collection.
> >
> > (3) The assignment was manifested by a written agreement separate from and in addition to any document intended for the purpose of listing the account, bill, or other evidence of indebtedness with the collection agency. The written agreement shall state the effective date of the assignment and the consideration paid or given, if any, for the assignment and shall expressly authorize the collection agency to refer the assigned account, bill, or other evidence of indebtedness to an attorney admitted to the practice of law in this state for the commencement of litigation. The written agreement also shall disclose that the collection agency may consolidate, for purposes of filing an action, the assigned account, bill, or other

evidence of indebtedness with those of other creditors against an individual debtor or co-debtors.

(4) Upon the effective date of the assignment to the collection agency, the creditor's account maintained by the collection agency in connection with the assigned account, bill, or other evidence of indebtedness was canceled.

**{¶26}** Paluscsak also fails to demonstrate how the Gusses engaged in the unauthorized practice of law. He simply states that the "Gusses knowingly enabled the unauthorized practice of law by UCB," and that "there is no direct attorney client relationship between the alleged real party in interest (SVCMC) and the lawyer (Gusses) prosecuting the lawsuit." However, Paluscsak's arguments are misplaced because SVCMC voluntarily dismissed its action against him, UCB was never assigned his debt, and the Gusses were hired to file a lawsuit on behalf of SVCMC. Attorneys and law firms do not engage in the unauthorized practice of law by instituting a legal action to collect on a debt against the debtor, because they file the action on behalf of the creditor rather than for themselves. *See Reese* at ¶ 91.

**{¶27}** Therefore, Paluscsak's second assignment of error is overruled.

## D.    Incorrect Location for Filing of Claim

**{¶28}** In Paluscsak's third assignment of error, he argues that the trial court committed prejudicial error in finding that the appellees did not violate the FDCPA by filing a collection lawsuit in a court district where he did not reside. The initial action filed by the appellees was filed in Cleveland Municipal Court and Paluscsak

resides in Garfield Heights.  He argues that the failure to file in Garfield Heights Municipal Court violates 15 U.S.C. 1692i, which states:

> Any debt collector who brings any legal action on a debt against any consumer shall —
>
>> (1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or
>>
>> (2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity —
>>
>>> (A) in which such consumer signed the contract sued upon; or
>>>
>>> (B) in which such consumer resides at the commencement of the action.

{¶29} The case was moved to the common pleas court in Cuyahoga County, the county in which Garfield Heights is located, in accordance with R.C. 1319.12(D), which states:

> A collection agency shall commence litigation for the collection of an assigned account, bill, or other evidence of indebtedness in a court of competent jurisdiction located in the county in which the debtor resides, or in the case of co-debtors, a county in which at least one of the co-debtors resides.

{¶30} SVCMS and the Gusses filed the lawsuit in Cleveland Municipal Court because when they looked up Paluscsak's address in the Ohio Legal Directory, which displayed Paluscsak's city as Cleveland instead of Garfield Heights.  The

appellees made an error in good faith and are entitled to the bona fide error defense.

> A debt collector may not be held liable in any action brought under this title [15 U.S.C. 1692 et seq.]  if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. 1692k(c).  Once the error was known to the appellees, they dismissed their claim and refiled it in the proper court.  In the trial court's decision, it explained at length how the appellees made a good faith effort to locate Paluscsak's address and file in the correct court.

**{¶31}** Therefore, Paluscsak's third assignment of error is overruled.

### E.     FDCPA and OCSPA Violations

**{¶32}** In Paluscsak's fourth and fifth assignments of error, he argues that the trial court erred when it failed to find that the appellees violated the FDCPA and OCSPA by filing a lawsuit under St. Vincent Charity rather than St. Vincent Charity Medical Center.  Paluscsak further claims that the filing constituted a false, deceptive, or misleading representation on the part of the appellees, in violation of R.C. 1345.02,  and 15 U.S.C. 1692e(5)  that states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
>> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

**{¶33}** We previously determined that Paluscsak lacked standing to bring an action under FDCPA and OCSPA regarding the use of the abbreviated name, St. Vincent Charity, because he failed to demonstrate that the appellees violated the FDCPA and OCSPA.

**{¶34}** Therefore, Paluscsak's fourth and fifth assignments of error are overruled.

### III. Motion to Compel

#### A. Standard of Review

**{¶35}** "We review a trial court's decision to grant or deny a motion to compel for an abuse of discretion." *United States Specialty Sports Assn. v. Majni*, 2022-Ohio-3035, ¶ 14 (8th Dist.), citing *Wolnik v. Matthew J. Messina, DDS, Inc.*, 2007-Ohio-1446, ¶ 15 (8th Dist.).

**{¶36}** "The Ohio Supreme Court recently explained that an abuse of discretion 'involves more than a difference in opinion * * *.'" *State v. Price*, 2023-Ohio-3790, ¶ 32, (8th Dist.), quoting *State v. Weaver*, 2022-Ohio-4371, ¶ 24. "That is, a trial court's judgment that is 'profoundly and wholly violative of fact and reason' constitutes an abuse of discretion." *Id.*

#### B. Law and Analysis

**{¶37}** In Paluscsak's sixth assignment of error, he argues that the trial court abused its discretion in denying his motions to compel discovery from UCB and

the Gusses regarding their contractual relationships and communications about actions taken against him. On August 26, 2021, Paluscsak filed a motion to compel discovery from the Gusses, and on September 20, 2021, filed the same motion against UCB. On December 13, 2021, the trial court denied both motions. "Courts have broad discretion over discovery matters." *Huntington Natl. Bank v. Dixon*, 2015-Ohio-1735, ¶ 19 (8th Dist.), citing *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 2007-Ohio-5542, ¶ 18. Paluscsak has not demonstrated how the trial court abused its discretion in its denial of his motion to compel attorney-client communications.

{¶38} UCB acted as a conduit between the Gusses and SVCMC to file a debt collection action against Paluscsak. A written attorney-client agreement was entered into and provided to Paluscsak, who continuously argues that there is no agreement between the parties. Further, Paluscsak has not demonstrated why this discovery is essential to his case or claims.

{¶39} Therefore, Paluscsak's sixth assignment of error is overruled.

{¶40} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MICHELLE J. SHEEHAN, P.J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, J., CONCURRING:

**{¶ 41}** Ohio's Consumer Sales Practices Act ("CSPA") and the federal Fair Debt Collection Practices Act ("FDCPA") are meant to protect consumers from unfair or deceptive practices. Neither statutory scheme is intended to punish a creditor for honest or technical mistakes in seeking to collect legitimate debts. *See, e.g., Durnell's RV Sales, Inc. v. Beckler*, 2023-Ohio-3565, ¶ 48 (3d Dist.) (record demonstrates that the defendant made an honest mistake in selling goods but offered to remedy the issue upon discovering it, and therefore, the plaintiff failed to prove a CSPA violation); *Thurow v. Professional Fin. Co.*, 2017 U.S. Dist. LEXIS 103774, *12 (D. Col. July 5, 2017). This litigation is well into its seventh year (*see St. Vincent Charity v. Paluscsak*, 2020-Ohio-1501, ¶ 32) and stems from the attempted collection of a $1,750.40 debt for medical services rendered that Paluscsak has never seriously contested. He acknowledged at his deposition that he received the treatment and consented to bearing financial responsibility for the costs incurred. Instead of working to resolve the dispute, Paluscsak seeks to capitalize on unprejudicial mistakes allegedly committed during the attempted

collection process. In light of the arguments presented in the motion for reconsideration and for en banc review, I am compelled to write separately to clarify my rationale in joining the majority's decision.

{¶ 42} Paluscsak's allegations are limited, generally lumping together all counterclaim defendants despite their differing roles in this saga. He also makes no distinction between the original creditor or the third-party collection agents. Beyond the issue of standing, thoroughly addressed in the majority opinion, and based on the following, I would also conclude that Paluscsak failed to demonstrate a genuine issue of material fact necessitating a trial on any of the two remaining claims under CSPA and the FDCPA.

{¶ 43} Paluscsak first claims that St. Vincent Charity and its attorneys[2] violated the CSPA and the FDCPA by inadvertently suing him in the wrong municipal court, a course of action not attributable to the collection firm that was not named in the complaint or assigned the debt. In statutory parlance, at the least, the counterclaim defendants demonstrated that the venue mistake was unintentional and a bona fide error that was immediately remedied. *See* 15 U.S.C. 1692k(c).

---

[2] Paluscsak places much emphasis on whether the debt collection firm hired the attorneys on behalf of SVCMC. That emphasis is irrelevant. Attorneys are routinely retained by third parties, but their duty is solely owed to the client, not the hiring party. The initial complaint was filed by the counterclaim-defendant attorneys on behalf of St. Vincent Charity. Thus, they represented the plaintiff in this matter, not the collection firm.

**{¶ 44}** Paluscsak cites only the testimony of Attorney Szperski, the lawyer responsible for the filing, in which he established that he unintentionally attributed the 44101-44147 zip code range obtained from a legal directory as addresses located within Cleveland, Ohio, in general, instead of directly confirming the location of the 44125-zip code in particular. Attorney Szperski also inadvertently overlooked that some of the documents reflected the Garfield Heights situs. Paluscsak uses that evidence in an attempt to claim the mistake was intentional or contrived.

**{¶ 45}** Paluscsak does not cite any other evidence pertaining to any other counterclaim defendant regarding the decision to file the claim in Cleveland Municipal Court. His sole focus was on the fact that a mistake was made as to the city of Paluscsak's residence. Instead of identifying genuine issues of fact for trial or citing any authority to support the necessity of a trial, Paluscsak claims that reversible error occurred because the trial court "blindly accepted" the deposition testimony presented by the counterclaim defendants.

**{¶ 46}** Despite the procedures the firm testified to using to identify the correct address for the purposes of venue, an honest mistake was made based on the testimony presented.[3] The burden shifted to Paluscsak to demonstrate a genuine

---

[3] In his appellate briefing, Paluscsak argues that there was no written procedure produced during discovery. It is unclear why that would be relevant. 15 U.S.C. 1692k(c) does not require a procedure to be in writing. It just requires the defendant to demonstrate a "bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error," such as relying on a legal directory listing the cities for different zip codes in ascertaining venue.

issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). He has not demonstrated any contested facts demonstrating that the filing in Cleveland Municipal Court was intentional or contrived, and this panel is not required to scour the record looking for such information. *Montgomery v. ExchangeBase, LLC*, 2024-Ohio-2585, ¶ 64 (8th Dist.).

{¶ 47} But regardless, in opposition to the motion to transfer the matter to the Cuyahoga County Court of Common Pleas based on the counterclaim exceeding the monetary jurisdiction of the municipal court, Paluscsak argued that jurisdiction and venue were in fact proper in Cleveland Municipal Court. At no point in time does it appear that Paluscsak ever asked for the case to be transferred to Garfield Heights Municipal Court as the only proper venue. *See, e.g., Mohan J. Durve, M.D., Inc. v. Oker*, 112 Ohio App.3d 432, 437 (8th Dist.1996). Instead, he actively sought for the Cleveland Municipal Court to retain jurisdiction to resolve his claims. He cannot have it both ways.

{¶ 48} And beyond all that, the filing in Cleveland Municipal Court was not demonstrated to be in violation of 15 U.S.C. 1692i(a)(2).

{¶ 49} As the appellees argued, Paluscsak failed to demonstrate that Cleveland Municipal Court was the improper venue because Paluscsak was unable to establish where he signed the contract authorizing the medical services underlying his debt. It was Paluscsak's burden to demonstrate that venue was improper in Cleveland Municipal Court under 15 U.S.C. 1692i(a)(2). Paluscsak does

not challenge that assertion but instead claims the original complaint against him sounded in equity and was not based on contract because the complaint mentioned that he had "been unjustly enriched" by the services rendered.

{¶ 50} The original complaint, however, was on an account for services rendered, with the complaint identifying the associated account and designating Paluscsak as a "co-guarantor." Generally speaking, an action on an account for services performed that designate a debtor as a "guarantor" arises from contract, not equity. *See Deffren v. Johnson*, 2021-Ohio-817, ¶ 10 (1st Dist.). In short, Paluscsak failed to present any evidence, much less evidence demonstrating a genuine issue of material fact, that venue was improper in Cleveland Municipal Court. That was his burden to prove in order to substantiate the counterclaim alleging a violation of 15 U.S.C. 1692i(a)(2).

{¶ 51} Paluscsak additionally claims that the counterclaim defendants violated the CSPA and the FDCPA because neither SVCMC's attorneys nor the collection agency included SVCMC's full name in the collection process or in filing the initial pleading, which according to Paluscsak is an unfair and deceptive act. Because SVCMC is the original creditor, it does not appear that this allegation pertains to it. *See HSBC Bank USA v. Teagarden*, 2013-Ohio-5816, ¶ 21 (11th Dist.) (recognizing that the FDCPA does not apply to creditors seeking to collect a debt owed to themselves). Nevertheless, as the trial court aptly noted, the vast weight of authority does not support this claim.

{¶ 52} To begin with, although a party cannot sue under a fictitious name, the remedy is to dismiss the case without prejudice under generally recognized standing principles. *Buckeye Foods v. Cuyahoga Cty. Bd. of Revision*, 78 Ohio St.3d 459, 462 (1997). Paluscsak did not pursue that theory of a defense. In fact, he immediately recognized that St. Vincent Charity was SVCMC — Palusczak expressly intended to include SVCMC as a counterclaim defendant in his initial pleading by designating SVCMC as a "John Doe" defendant who was then substituted for later in the proceeding. In other words, he immediately understood St. Vincent Charity's legal name was SVCMC, which maintained the legal right to sue Paluscsak for his indebtedness. In addition, he failed to provide any evidence throughout this seven-year proceeding demonstrating any confusion as to the identity of St. Vincent Charity when he received the initial letters from SVCMC's attorneys or the collection firm. *See, e.g., Miller v. Javitch, Block & Rathbone,* 561 F.3d 588, 591 (6th Cir. 2009) (affirming the granting of summary judgment in the creditor's favor after noting the debtor "pretty much" understood the complaint despite the idiosyncratic wording of the complaint and did not demonstrate any confusion as to the nature of the debt). In fact, he admitted that it would have made no difference had the collection letters included SVCMC's full name.

{¶ 53} On this point, Paluscsak does not address any of the trial court's cited authority thoroughly demonstrating that use of a truncated name is not a per se violation of the FDCPA or CSPA. *See, e.g., Stuppiello v. S.W. Credit Sys., L.P.,* 2017

U.S. Dist. LEXIS 213450, *19-22 (S.D. Cal. Jan. 9, 2017) (the collection notice did not violate the FDCPA by identifying the creditor as "AT&T" instead of its legal name, "Pacific Bell Telephone Company dba AT&T California"). Despite the trial court's conclusion as to the legal question, he maintains that using the truncated name, a name not associated with any other entity in Ohio, is misleading and a violation of the FDCPA and the CSPA. Paluscsak offers no authority to support his counter-assertion. In light of the weight of authority provided by the trial court contrary to Paluscsak's argument, which I would adopt wholesale herein because it is not contested by Paluscsak in this appeal, the trial court's legal conclusion cannot be deemed to have been entered in error.

{¶ 54} Appellate review of a decision granting summary judgment is reviewed de novo, without respect to the credibility of the evidence presented for review. The gist of Paluscsak's claims is that he is entitled to a trial on the merits of his CSPA and FDCPA claims, but he has not identified any legal errors or any genuine issues of material fact, and as a result, I cannot conclude that the trial court erred in granting judgment in the counterclaim defendants' favor upon the FDCPA and CSPA claims advanced in the amended counterclaim.

{¶ 55} And finally, as to the remaining arguments, I agree with the majority's conclusion that Paluscsak failed to include factual allegations supporting a violation of R.C. 1319.12 and the unauthorized practice of law within the amended counterclaim. Notice pleading only goes so far. Civ.R. 8. It should also be noted

that in his reply brief, Paluscsak cites paragraph 10 of his amended counterclaim as proof that he properly asserted the statutory violation based on the alleged unauthorized practice of law committed by the collection firm in the counterclaim. That paragraph in the amended pleading asserts an affirmative defense to the by then dismissed complaint. That has no bearing on the allegations advanced in the amended counterclaim, which is silent as to any conduct alleged against the collection firm pertaining to R.C. 1319.12 or the unauthorized practice of law. Since no allegations of facts pertaining to a violation of R.C. 1319.12 or the unauthorized practice of law were properly pleaded within the counterclaim, no such claim exists in the underlying action. The trial court correctly disregarded Paluscsak's argument. Moreover, Paluscsak provided no authority or analysis in favor of his final assignment of error pertaining to the motion to compel in violation of App.R. 16(A)(7). I would not include any further discussion on that topic.

{¶ 56} The counterclaim defendants demonstrated the absence of genuine issues of material fact as to all claims. In light of the above, I would additionally conclude that Paluscsak has presented no evidence demonstrating a genuine issue of material fact that would support his claims. With this additional reason, I concur with the majority decision in affirming the decision of the trial court.